# 7288 &

SOUTHERN COFFEE MILLS

    VS

                                  NO. 7288

DENNIS SHEEN TRANSFER

CHARLES F. CLAIBORNE, JUDGE.

April 1st. 1918.

CHARLES F. CLAIBORNE, JUDGE.

This is a suit for the value of a mule. Plaintiff was the owner of the mule. Defendant, among other pursuits, conducted a pasturage business for hire; in other words, was an agister of cattle. Plaintiff placed his mule on defendant's pasture at the price of $3.00 per month. When plaintiff called for his mule, defendant failed to produce it. Hence this suit. Plaintiff claims $200.00 as the value of the mule.

The defendant excepted that the petition disclosed no cause of action on the ground that it failed to aver that the loss of or injury of the mule was due to the want of care of the defendant.

The District Judge overruled the exception and correctly so. There was no allegation in the petition that the mule had been lost or injured. For all the plaintiff knew the mule might have been in the possession of defendant or of some one else safe and sound. It was for the defendant in their answer to give some legal reason why they did not return the mule. Answering, defendant averred that some time after the plaintiff had placed his mule on defendant's pasture, charbon broke out among the animals in the pasture; that as soon as the defendant became aware of this, he notified all the owners of all the animals in his pasture including plaintiff, requesting their removal; but that plaintiff negligently left his mule in the pasture, where it shortly after contracted charbon and died, without any fault of defendant.

There was judgment for plaintiff and defendant has appealed.

The question as to the degree of care an agister of cattle must exercise towards the animals in his custody and the extent of his liability for injury or loss, about which jurisconsults differ, does not arise in this case. But all will agree that the agister's duty is to return the animal to the owner; or, failing in this, to give some excuse recognized by law. The learned counsel for the defense have tacitly admitted this principle and

have held out as a shield against the demand herein the defense that the mule contracted charbon on the pasture and died.

The burden was upon the defendant to establish this defense. Have they done so?

It would serve no useful purpose to reproduce here all the testimony upon which we rely to announce our conclusion that they have not done so.

There is no witness who testifies that he saw the plaintiff's mule afflicted with charbon or any other disease, or that he recognized its dead body.

The defense is based on presumptions exclusively, too weak to support a judgment in their favor.

Their theory is that charbon prevailed among the cattle in their pasture; that seven animals died of it; that inasmuch as plaintiff's mule was not found among the living, ergo it must have been among the dead. If that was the only possible solution of the situation, there would be much force in the syllogism. But the defense and the evidence are that charbon is a death-dealing and contagious disease; that as soon as it was discovered on the pasture, the defendants caused all the seventeen owners of cattle to be notified, and that all the owners who had been notified, and the defendants themselves, removed their cattle, amounting to 47, the same day or the next day. It might be possible that in this scramble some of the owners might have been more particular in securing an animal than in making sure that the animal secured was the one they owned.

Some weight may be attached to this possible action by the testimony of four witnesses, stablemen and drivers and horse-shoers, who all swear most positively that they were well acquainted with plaintiffs mule and that they recognized it among the mules in defendant's stables. On the other hand two witnesses stablemen and drivers, and two defendants, swear with equal assurance that the mule pointed out by plaintiff's witnesses was the property of the defendants for the last three years *and they seem to be right.* We do not refer to this episode, as defendants qualify it, with any intention of determining the issue between these two sets of witnesses, but only to demonstrate the uncertainty of the defense

106

that the mule claimed had died. 32A 251.

The manner in which cattle were delivered to those who called for them is thus described by the Keeper of the pasture, when plaintiffs went for their mule:

A. "Well, I told them I didn't know his mules; to go back and see what was his own mules, to take them; I didn't know which was his mules."

There is also the testimony of two witnesses to the effect that they were told by the Keeper that a previous Keeper had been in the habit of renting out mules; and the Keeper herself and the defendant corroborate this testimony.

One of the officers of the defendant company was asked:

Q. Have you any other information as to what became of the animal herein sued on, of your own knowledge?

To which he answered:

"I do not sir."

The Keeper of the pasture made the same answer.

The same witness was aksed:

Q. What became of Mr. Hoffman's mule?

A. Mr. Hoffman's mule died of charbon.

Q. Did you see him?

A. I did not.

Q. How do you know he died of charbon?

A. Because he must have been in the back of the pasture that we burned up and hauled out of there.

Q. Do you know personally whether Hoffman's mule ever had charbon?

A. Well, I would be lying if I stated I did. No, I dont.

Indeed it would have been difficult for him to testify that he knew plaintiff's mule was dead, since there is no evidence that he had ever seen the mule while it was alive. Nor is there any evidence that any body had told him that the mule was sick or had died. It was all an inference and a surmise. The defendants did not at any time notify the plaintiffs that their mule was sick or dead. The presumption is not certain enough to entitle defendant to a judgment. Plaintiff testified that he paid for the mule $325.00 in 1911, and that it was in first class condition

107

at the time it was sent to pasture. There is no testimony in conflict.

We consider it fair to assume that the mule was worth at least $200.00 at the time of this suit.

Judgment affirmed.

April 1st. 1918.